UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

SETSEA SPA,

                Plaintiff,

   - against -

SOURCE LINK SHIPPING CO. LTD.,

                Defendant.

-----------------------------------------------------------------X

**07 CIV 6230**

ECF CASE

## VERIFIED COMPLAINT

    Plaintiff, SETSEA SPA (hereinafter referred to as "Setsea" or "Plaintiff") by and through

its attorneys, Tisdale Law Offices LLC, as and for its Verified Complaint against the Defendant,

SOURCE LINK SHIPPING CO. LTD. (hereinafter referred to as "Source Link" or

"Defendant"), alleges, upon information and belief, as follows:

    1.     This is an admiralty and maritime claim within the meaning of Rule 9(h) of the

Federal Rules of Civil Procedure and 28 United States Code § 1333.

    2.     At all times material to this action, Plaintiff was, and still is, a foreign company

duly organized and operating under foreign law with a principle place of business in Torre del

Greco, Naples, Italy.

    3.     Upon information and belief, Defendant was, and still is, a foreign corporation, or

other business entity, organized under, and existing by virtue of foreign law with places of

business in the British Virgin Islands and China.

    4.     Pursuant to two Forward Freight "Swap" Agreements respectively dated

December 13, 2006 and January 22, 2007 (hereinafter referred to as the "Agreements") Source

Link agreed to buy and sell Freight Futures with Setsea.

5.    As defined by the Baltic Exchange, Forward Freight Agreements are a "means of hedging exposure to freight market risk through the trading of specified time charter and voyage rates for forward positions. Settlement is against a relevant route assessment published by the Baltic Exchange." The Baltic Exchange is "a membership organization at the heart of the global maritime marketplace" that provides "independent daily shipping market information." *See The Baltic Exchange,* http://www.balticexchange.com. Ocean freight is the charge assessed for the carriage of cargo by a vessel and is one of the most fundamental components of maritime commerce. Freight is considered so integral to the maritime industry that it has been said that "freight earnings are a part of the vessel as much as the ship's tackle." *Rush v. Delaware & Chesapeake S.S. Co.,* 10 Supp. 497, 501 (E.D. Pa. 1935).

6.    Specifically, Setsea and Source link entered into two maritime contracts for the swap of the future value of ocean freight. Both of these contracts specify the type of vessel to be used, the routes upon which said vessels would travel and the duration of the Agreement. The first of these Agreements, dated December 13, 2006, specifies in paragraph one of the contract that the "contract route" is to be the Baltic Panamax Index average of Routes (1A/2A/3A/4)." The second contract, dated January 22, 2007, specifies that the contract route will be the average of "Routes 8, 9, 10 and 11 of the Baltic Capesize Index." In so stating the parties have agreed that only particular ocean routes will be used and that such voyages will be carried out by Panamax and Capesize vessels.

7.    Forward Freight Agreements have been found to be maritime cases entitled to process of maritime attachment in the following cases: Brave Bulk Transport, Ltd. v. Spot On Shipping, Ltd, et al., 07 CV 04546 (CM); C. Transport Panamax Ltd. v. North America Steamships Ltd., a.k.a. N.A.S.L., 06 CV 13178 (RLC); Daeyang Shipping Co. Ltd. v. Navitrans

Maritime Inc., 04 CV 08050 (VM); Deiulemar v. Source Link Shipping Co. Ltd., 07 CV 02983 (SAS); Deiulemar v. Spot On Shipping Ltd., 07 CV 03820 (VM); Eurotrade Inc., Liberia v. Source Link Shipping Co. Ltd., BVI, 07 CV 3172 (SAS); Pan Oceanic Maritime Inc. v. Source Link Shipping Co. Ltd., 07 CV 03089 (CM); Perseveranza Di Navigazione S.P.A. v. Source Link Shipping Co. Ltd., 07 CV 03091 (RPP); Taiwan Maritime Transport Co. Ltd. v. Navitrans Maritime Inc. and Navigation Maritime Inc., 06 CV 13564 (RJH).

8.      Maritime Jurisdiction is conferred where the contract has "reference to maritime service or maritime transactions." *Norfolk S. Ry. Co. v. James N. Kirby, Pty Ltd.*, 542 U.S. 14, 24(2004) quoting *North Pacific S.S. Co. v. Hall Brothers Marine Railway & Shipbuilding Co.*, 249 U.S. 119, 125 (1919). Where "the subject matter of the contract relates to a ship in its use as such, *or to commerce* or to navigation on navigable waters, or to transportation by sea or to maritime employment it is fairly said to constitute a maritime contract." *Ingersoll Milling Mach. Co. v. M/V BODENA*, 829 F.2d 293, 302 (2d Cir. 1987). There is no requirement that a specific cargo or a specific vessel be referenced to meet this definition.

9.      Federal Admiralty jurisdiction has been found to exist in comparable cases. For example, courts in the United States have found that federal maritime jurisdiction exists over contracts of all types of marine insurance, including, cargo, hull, P&I, etc., see *Simon v. Intercontinental Transport (ICT) B.V.*, 882 F. 2d 1435 (2 d Cir. 1989), *Wilburn Boat Co. v. Fireman's Fund Ins. Co.*, 348 U.S. 310 (1955), as well as to contracts to procure marine insurance, See, *Romen Inc. v. Price-Forbes*, 824 F. Supp. 206 (S.D. Fla. 1992). Contracts for the winter storage of boat, on land, which cover the period the boats will not be in navigation, have been found to be a maritime contract. See *Omaha Indemnity v. Whaleneck Harbor Marina*, 610 F. Supp. 154 (E.D.N.Y. 1985). A lease for the use of ocean containers by a vessel owner on any

of the Owner's many vessels, has been found to be maritime even though the containers may have spent less time on the defendant's vessels than on land at the terminals, or in transport by truck, rail or air. See *CTI-Container Leasing Corp. v. Oceanic Operations Corp.*, 682 F. 2d 377 (2d Cir. 1982).

     10.    This case is analogous to the United States Supreme Court's recent finding in *Exxon Corp v. Central Gulf Lines*, 500 U.S. 603, that a marine fuel requirement's contract is maritime. *Id.* In *Exxon*, the Court reasoned that a contract for the future sale of fuel oil was maritime in nature because the value of the fuel related to maritime commerce. *Id.* at 613. Importantly, in *Exxon*, the Supreme Court greatly expanded the scope of admiralty jurisdiction for contracts by eliminating the "preliminary services" rule that kept contracts such as these from being conferred admiralty jurisdiction. *Id.* at 608; citing *The Thames*, 10 F. 848 (S.D.N.Y. 1881). In *Exxon Corp.*, the Court found that, not only did admiralty jurisdiction apply to those supplies where Exxon was the physical supplier of the fuel, but also to those contracts where the fuel was provided and delivered by a third party at the request of Exxon. In that case, and as later reiterated by the Supreme Court in *Kirby*, the Court stated: "The 'fundamental interest giving rise to maritime jurisdiction is 'the protection of maritime commerce.' (citing *Exxon, supra*). The conceptual approach vindicates that interest by focusing the court's inquiry on whether the principal objective of a contract is maritime commerce." *Kirby*, at 25. In *Kirby*, the Supreme Court recognized the changes in maritime transportation and commerce which have occurred in recent times from traditional ocean carriage.

     11.    Following the reasoning set out in *Exxon*, this Court recently determined that a 'cooperation contract' is a maritime contract because it provides a "shipping management function [that] increase[s] the efficiency and decrease[s] the cost of... shipments of large

quantities of various metals." *See Sea Transport Contractors, Ltd. v. Industries Chemiques du Senegal,* No. 05 Civ. 10271 (RCC), 411 F. Supp.2d 386, 2006 AMC 1076, 1084 (S.D.N.Y. January 24, 2006). In so finding, this Court reasoned, "it is of no moment in the Exxon analysis that STC will seek future charter parties, or act as an agent of ICS in so doing. Indeed STC's contract... is similar to the maritime contract in *Exxon* where Exxon promised to supply fuel even if by way of a third party." *Id.*

12.    While FFAs do seek to minimize financial risk, the risk they seek to minimize is of fluctuating ocean freight rates for specific groups of vessels traveling identified and agreed to ocean routes. The financial nature of these transactions does not compromise their maritime status. As indicated above, maritime jurisdiction explicitly includes maritime "transactions" that relate to maritime "commerce."

13.    During the course of the Agreements, a dispute arose between the parties regarding Defendant's failure to pay the losses sustained by it in breach of the Agreements.

14.    As a result of Defendant's breach of the Agreements, Plaintiff has sustained damages in the total principal amount of $1,602,691.50, exclusive of interest, arbitration costs and attorneys fees.

15.    Pursuant to clause 16 of both Agreements, all disputes arising thereunder are to be construed in accordance with English law and subject to the non-exclusive jurisdiction of the High Court of Justice in London, England, and Plaintiff will soon commence court proceedings pursuant to the Agreements.

16.    Despite due demand, Defendant has failed to pay the amounts due and owing under the Agreements.

17.    Interest, costs and attorneys' fees are routinely awarded to the prevailing party under English Law. As best as can now be estimated, Plaintiff expects to recover the following amounts:

| | | |
|---|---|---|
| A. | Principal claim: | $1,602,691.50 |
| B. | Estimated interest on claim: 3 years at 6.5% | $333,613.15 |
| C. | Estimated Attorneys' Fees and Expenses: | $200,000.00 |

**Total**                                                    **$2,136,304.65**

18.    The Defendant cannot be found within this District within the meaning of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure, but, upon information and belief, Defendant has, or will have during the pendency of this action, assets within this District and subject to the jurisdiction of this Court, held in the hands of garnishees including, but not limited to, ABN Amro, American Express Bank, Bank of America, Bank of New York, Citibank, Deutsche Bank A.G., HSBC Bank USA Bank, J.P. Morgan Chase, Standard Chartered Bank, and/or Wachovia Bank N.A., which are believed to be due and owing to the Defendant.

19.    The Plaintiff seeks an order from this court directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, attaching, *inter alia*, any assets of the Defendant held by the aforesaid garnishee for the purpose of obtaining personal jurisdiction over the Defendant, and to secure the Plaintiff's claims as described above.

**WHEREFORE**, Plaintiff prays:

A.    That process in due form of law issue against the Defendant, citing it to appear and answer under oath all and singular the matters alleged in the Complaint;

B.    That since the Defendant cannot be found within this District pursuant to

Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, this Court issue

an Order directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment

pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims,

attaching all goods, chattels, credits, letters of credit, bills of lading, effects, debts and monies,

tangible or intangible, or any other funds held by any garnishee, including, but not limited to,

ABN Amro, American Express Bank, Bank of America, Bank of New York, Citibank, Deutsche

Bank A.G., HSBC Bank USA Bank, J.P. Morgan Chase, Standard Chartered Bank, and/or

Wachovia Bank N.A., which are due and owing to the Defendant, in the amount of

**$2,136,304.65** calculated to date to secure the Plaintiff's claims, and that all persons claiming

any interest in the same be cited to appear and pursuant to Supplemental Admiralty Rule B

answer the matters alleged in the Complaint;

C.    That this Court recognize and confirm any arbitration awards or judgments

rendered on the claims had herein as Judgments of this Court;

D.    That this Court retain jurisdiction over this matter through the entry of any

judgments or awards associated with any of the claims currently pending, or which may be

initiated in the future, including any appeals thereof; and

E.    That the Plaintiffs have such other, further and different relief as the Court

may deem just and proper.

Dated: New York, New York
       July 5, 2007

The Plaintiff,
SETSEA SPA,

By: _____

Lauren C. Davies (LD 1980)
Thomas L. Tisdale (TT 5263)
TISDALE LAW OFFICES LLC
11 West 42nd Street, Suite 900
New York, NY 10036
(212) 354-0025 – phone
(212) 869-0067 – fax
ldavies@tisdale-law.com
ttisdale@tisdale-law.com

## ATTORNEY'S VERIFICATION

State of Connecticut  )
                         )    ss.:    Town of Southport
County of Fairfield    )

    1.      My name is Lauren C. Davies.

    2.      I am over 18 years of age, of sound mind, capable of making this Verification, and fully competent to testify to all matters stated herein.

    3.      I am an attorney with the firm of Tisdale Law Offices LLC, attorneys for the Plaintiff.

    4.      I have read the foregoing Verified Complaint and know the contents thereof and believe the same to be true and accurate to the best of my knowledge, information and belief.

    5.      The reason why this Verification is being made by the deponent and not by the Plaintiff is that the Plaintiff is a business organization with no officers or directors now within this District.

    6.      The source of my knowledge and the grounds for my belief are the statements made, and the documents and information received from, the Plaintiff and agents and/or representatives of the Plaintiff.

    7.      I am authorized to make this Verification on behalf of the Plaintiff.

Dated:      Southport, CT
             July 5, 2007

                                           Lauren C. Davies