# EXHIBIT 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
SETSEA S.P.A.,

                              Plaintiff,

        -against-                           07 Civ. 4147  (DAB)
                                                  ORDER

SOURCE LINK SHIPPING CO. LTD.,

                         Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
DEBORAH A. BATTS, United States District Judge.

        Plaintiff Setsea S.p.A. brings this action against Defendant

Source Link Shipping Co. Ltd. for damages and costs it sustained

as a result of Defendant's alleged breach of two Forward Freight

"Swap" Agreements.  Plaintiff seeks an Order from the Court

"directing the Clerk of Court to issue Process of Maritime

Attachment and Garnishment pursuant to Rule B of the Supplemental

Rules for Certain Admiralty and Maritime Claims" against

Defendant to secure Plaintiff's claims and so that the Court may

obtain personal jurisdiction over Defendant.  (Complaint ¶ 11.)

Plaintiff alleges that the Court has subject matter jurisdiction

over this matter because its claim regarding the alleged breach

of the Forward Freight "Swap" Agreements constitutes "an

admiralty and maritime claim within the meaning of Rule 9(h) of

the Federal Rules of Civil Procedure and 28 United States Code §

1333." (Id. ¶ 1.)  Plaintiff submitted a cover-letter dated May

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 6/5/2007

29, 2007 in support of its application for an Ex Parte Order For

Process of Maritime Attachment against Defendant in which it

argued that "[w]hile there are no decisions in this or any other

Circuit that speak directly on whether a Forward Freight 'Swap'

Agreement or any other Freight Futures Contract is maritime,

these agreements have all the hallmarks of a maritime contract."[1]


Having considered Plaintiff's Complaint, the two Forward

Freight "Swap" Agreements that are the subject of the Complaint

and Plaintiff's application for an Ex Parte Order For Process of

Maritime Attachment, for the reasons set forth below, the Court

DENIES Plaintiff's application.  The Court finds that the Forward

Freight "Swap" Agreements that Defendant allegedly breached are

not maritime contracts and that therefore the Complaint alleging

their breach does not fall within the Court's original

jurisdiction over "[a]ny civil case of admiralty or maritime

jurisdiction," as provided by 28 U.S.C. § 1333(1).  Accordingly,

the Complaint is DISMISSED WITHOUT PREJUDICE.  See Fed. R. Civ.

P. 12(h)(3) ("[w]henever it appears by suggestion of the parties

or otherwise that the court lacks jurisdiction of the subject

matter, the court shall dismiss the action"); Steel Co. v.

---

[1]    At the Court's request, Plaintiff submitted copies of the
two Forward Freight "Swap" Agreements to Chambers.

Citizens for Better Environment, 523 U.S. 83, 94 (1998)

("`[w]ithout jurisdiction the court cannot proceed at all in any

cause'") (quoting Ex parte McCardle, 74 U.S. 506, 514 (1868)).[2]


BACKGROUND

Plaintiff alleges that Defendant agreed to "buy and sell

Freight Futures" with it pursuant to the two Forward Freight

"Swap" Agreements, dated December 13, 2006 and January 22, 2007

(the "Agreements"). (Complaint ¶ 4.) Plaintiff alleges that "a

dispute arose between the parties regarding Defendant's failure

to pay the losses sustained by it in breach of the Agreements"

and that it was thereby damaged "in the total principal amount of

$1,602,691.50." (Id. ¶¶ 5-6.)

The Complaint otherwise contains scant allegations regarding

the terms of the Agreements and of their subject matter. In

particular, the Complaint is vague as to the Agreements'

connection to maritime commerce. Plaintiff explains in its

cover-letter dated May 29, 2007, however, that the Agreements

"are commitments to perform in the future a shipping service

---

[2]    While it would appear, based on the Complaint's allegations, that the Court might have subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332, the lack of any allegations regarding the Court's personal jurisdiction over Defendant counsels in favor of dismissal without prejudice.

between ship owners, charterers and/or traders." Such agreements, according to Plaintiff's letter, are "negotiated with the express purpose of hedging and managing market risks relating to the employment of vessels in today's volatile freight market" and that the specific Agreements that Defendants allegedly breached were to "buy and sell a specified tonnage freight at an agreed price for an agreed route and time span so that both [Parties] could reliably predict their ocean freight revenues and costs for the duration of the contract for those ocean routes."

Having examined both Agreements, the Court notes that they are tied to maritime commerce in that they are dependant on averaged freight rates on international commercial freight routes, as assessed and published by the London-based Baltic Exchange in a variety of indices. The Agreements, for instance, contain provisions specifying "contract routes" which are defined as the to averaged routes of specified indices published by the Baltic Exchange. The Agreements do not, however, provide for the physical shipping or delivery of any specific freight tonnage or of any specific cargoes. Nor do they relate to the transportation of goods of any kind or to any specific vessels.

The Agreements specify a "contract rate" of several thousand dollars per day, along with a "contract quantity" term of ninety-one days on both Agreements, between April 2007 and June 2007. A

"settlement rate" which is also tied to Baltic Exchange indices is provided in each Agreement.  The main obligation of the Parties to the Agreements is described in identical provisions entitled "Settlement Sum":

> The "Settlement Sum" is the difference between the Contract Rate and the Settlement Rate multiplied by the Contract Quantity.  If the Settlement Rate is greater than the Contract Rate, the Seller shall pay the Buyer the Settlement Sum.  If the Settlement Rate is less than the Contract Rate, the Buyer shall pay the Seller the Settlement Sum.

In both Agreements, Plaintiff was the buyer and Defendant was the seller.  It is clear that the Parties agreed to settle their obligations under the Agreements in cash.

## DISCUSSION

Rule 12(h)(3) of the Federal Rules of Civil Procedure provides that "[w]henever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." Fed. R. Civ. P. 12(h)(3).  When resolving issues surrounding subject matter jurisdiction, a district court is not confined to the complaint and may refer to evidence outside the pleadings. Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000) (citing Kamen v. American Tel. & Tel. Co., 791 F.2d 1006, 1011 (2d Cir. 1986)). Furthermore, "jurisdiction must be shown affirmatively, and that

5

showing is not made by drawing from the pleadings inferences

favorable to the party asserting it." Shipping Financial

Services Corp. v. Drakos, 140 F.3d 129, 131 (2d Cir. 1998).

Title 28 U.S.C. § 1333(1) confers subject matter

jurisdiction over actions between "[a]ny civil case of admiralty

or maritime jurisdiction. . . ." 28 U.S.C. § 1333(1).

Determining whether a contract is maritime and therefore gives

rise to admiralty jurisdiction is difficult however.  The Supreme

Court has observed that federal case law has not drawn "clean

lines between maritime and non-maritime contracts." Norfolk S.

Ry. Co. v. James N. Kirby, Pty Ltd., 543 U.S. 14, 23 (2004);

Kossick v. United Fruit Co., 365 U.S. 731, 735 (1961) ("[t]he

boundaries of admiralty jurisdiction over contracts - as opposed

to torts or crimes - being conceptual rather than spatial, have

always been difficult to draw"); see also Ingersoll Milling Mach.

Co. v. M/V Bodena, 829 F.2d 293, 301 (2d Cir. 1987) ("[t]he

precise categorization of the contracts that warrant invocation

of the federal courts' admiralty jurisdiction has proven

particularly elusive" (quoting CTI-Container Leasing Corp. v.

Oceanic Operations Corp., 682 F.2d 377, 379 (2d Cir. 1982)).

A court must look to "the subject matter of the . . .

contract" and "the services performed under the contract" to

determine whether it a maritime contract. Exxon Corp. v. Central

Gulf Lines, Inc., 500 U.S. 603, 612 (1991). "[T]he true

criterion is whether [the contract] has 'reference to maritime

service or maritime transactions.'" Norfolk S. Ry. Co., 543 U.S.

at 24 (quoting North Pacific S.S. Co. v. Hall Brothers Marine

Railway & Shipbuilding Co., 249 U.S. 119, 125 (1919)). In

addition, the Second Circuit has held that, as a threshold

matter, "[b]efore attempting to categorize contractual rights as

maritime or non-maritime, a federal court must first consider

whether an issue related to maritime interests has been raised."

Atlantic Mut. Ins. Co. v. Balfour Maclaine Intern. Ltd., 968 F.2d

196, 199 (2d Cir. 1992).[3] To grant an Ex Parte Order For Process

of Maritime Attachment, a court must first determine that "the

plaintiff's claim [is] one which will support a finding of

admiralty jurisdiction under 28 U.S.C. § 1333." Winter Storm

Shipping, Ltd. v. TPI, 310 F.3d 236, 268 (2d Cir. 2002) (citation

omitted).

Turning to the Agreements presently before the Court, it is

clear that their subject matter is not "so attenuated from the

business of maritime commerce that it does not implicate the

---

[3]    The Second Circuit has, however, recently noted "some
uncertainty as to the extent to which this Court's 'threshold
inquiry' test survives the Supreme Court's most recent admiralty
decision, Norfolk Southern Railway Co. v. James N. Kirby Pty
Ltd.." Folksamerica Reinsurance Co. v. Clean Water of New York,
Inc., 413 F.3d 307, 313 (2d Cir. 2005).

concerns underlying admiralty and maritime jurisdiction."
Atlantic Mut. Ins. Co., 968 F.2d at 200. But while the
Agreements may pass the Second Circuit's "threshold inquiry" the
Court finds that they do not constitute maritime contracts
because, in their specific provisions, they lack "'reference to
maritime service or maritime transactions.'" Norfolk S. Ry. Co.,
543 U.S. at 24 (citation omitted). The Court finds that the
Agreements, when signed, related to reciprocal future promises of
payment in cash and that they do not address maritime services or
transactions such as the transportation of specific cargoes or
the involvement of specific vessels. The Agreements merely seek
to establish a means of minimizing financial risk and
establishing a formula to make future costs and revenues more
predictable. Plaintiff has therefore failed to establish that
this Court has admiralty jurisdiction over the alleged breach of
the Agreements. The Court accordingly DENIES Plaintiff's
application for an Ex Parte Order For Process of Maritime
Attachment and DISMISSES this action for lack of subject matter
jurisdiction pursuant to Fed. R. Civ. P. 12(h)(3).

LEAVE TO REPLEAD

Should Plaintiff seek to set out a sufficient basis for the
Court's exercise of jurisdiction in this action, it shall file an

8

Amended Complaint within thirty (30) days of the date of this Order.  Plaintiff's failure to do so shall be deemed a waiver of its right to amend the Complaint.

### CONCLUSION

Plaintiff's application for an Ex Parte Order For Process of Maritime Attachment is DENIED because the contracts at issue in this matter are not maritime contracts and therefore do not fall within the Court's admiralty jurisdiction under 28 U.S.C. § 1333(1).  As the Court lacks subject matter jurisdiction over this matter, pursuant to  Fed. R. Civ. P. 12(h)(3), the Complaint is DISMISSED WITHOUT PREJUDICE.

SO ORDERED.

Dated:    New York, New York
          June 5, 2007

                                    Deborah A. Batts
                                    United States District Judge