# EXHIBIT 2

# ICAPHYDE

FFABA 2005 (TM)

## FORWARD FREIGHT AGREEMENT BROKERS ASSOCIATION ('FFABA')
## FORWARD FREIGHT 'SWAP' AGREEMENT

**Trade Ref**  517710
**Contract Date**  13 December 2006

The purpose of this confirmation is to state the terms and conditions of the forward freight swap agreement entered into between:

**Seller**

**SOURCE LINK SHIPPING CO. LTD BVI**

15d Deji Mansion
188 Changjiang Road
Nanjing
210018
P.R China

Contact: Tony Tao
Phone: +86 2586816517
Fax: +86 2586816522
Email: chartering@sourcelink.cn

and

**Buyer**

**SETSEA SPA SOCIETA UNIPERSONALE**

Via G.Marconi,58
80059 Torre Del Greco(Naples), Italy
Contact: Filippo Lembo
Phone: +390818817829

Trade Ref    517710

2 BROADGATE, LONDON EC2M 7UR. TEL: +44(0)20 7532 4934  FAX: +44(0)20 7000 5942
ICAPHYDE LTD, has arranged the above trade for you as name-passing or introducing broker ICAPHYDE LTD is not responsible for documentation of the transaction between the parties, nor are we, or have we been, responsible for the provision of advice to any person in connection with the above trade. We are also not responsible for the exercise of any options. Please notify us immediately if you disagree with any

Fax: +390818829004

This agreement between the parties as constituted by this confirmation is referred to as the "Agreement"

Until superseded by notice information in subsequent confirmation or other communication, the above addresses are hereby recognized as the correct addresses to which any notification under this Agreement may properly be served.

### 1. Contract Route

As per BPI TC - Baltic Panamax Index Average of Routes (1A/2A/3A/4) as defined on the Contract Date including any relevant official forthcoming amendments published at the Contract Date which will become effective prior to the settlement of this Agreement.

### 2. Contract Rate

USD 28000.00 per Day

### 3. Contract Quantity

91 Days

### 4. Contract Months

April 2007, May 2007, June 2007

### 5. Contract Period

Average of All BPI Index days of the contract month(s) up to and including the Settlement date(s)

### 6. Settlement Date

The last Baltic Exchange Index publication day of each Contract Month

### 7. Settlement Rate

(a) The Settlement Rate shall be the average of the rates for the Contract Route(s) published by the Baltic Panamax Index over the Settlement Period defined as All of the Baltic Panamax Index publication days of the Contract Month(s) up to and including the Settlement Date.

(b) If for any reason the Baltic Panamax Index cannot provide any rate required for establishing the Settlement Rate, then the current chairman of the FFABA may be instructed by either party to form a panel comprising of a minimum of three independent brokers (the "Panel") to determine an appropriate rate, which determination will be final and binding on both parties.

Trade Ref    517710

2 BROADGATE, LONDON EC2M 7UR. TEL: +44(0)20 7532 4934  FAX: +44(0)20 7000 5942
ICAPHYDE LTD, has arranged the above trade for you as name-passing or introducing broker. ICAPHYDE LTD is not responsible for documentation of the transaction between the parties, nor are we, or have we been, responsible for the provision of advice to any person in connection with the above trade. We are also not responsible for the exercise of any options. Please notify us immediately if you disagree with any

(c) Each party shall bear its own costs and expenses in connection with any determination made pursuant to this clause 7.

(d) The parties shall severally indemnify and hold harmless each of the members of the Panel, the Baltic Panamax Index and its members and the FFABA and its members (the "Indemnified Persons") against all liabilities, actions, demands, costs and expenses incurred by any of them arising directly out of or in connection with the formation of the Panel and any determination made by the Panel.

(e) As between the parties, each party shall have a right of contribution against the other party in respect of any indemnity payment made pursuant to the preceding paragraph so that their respective liabilities pursuant to that paragraph shall be equal.

## 8. Settlement Sum

The "Settlement Sum" is the difference between the Contract Rate and the Settlement Rate multiplied by the Contract Quantity. If the Settlement Rate is greater than the Contract Rate, the Seller shall pay the Buyer the Settlement Sum. If the Settlement Rate is less than the Contract Rate, the Buyer shall pay the Seller the Settlement Sum.

## 9. Payment Procedure and Obligations

(a) Payment of the Settlement Sum is due on the later of two (2) London business days after presentation of payee's invoice (with complete payment instructions) or (5) London business days after the Settlement Date and for this purpose a "London business day" means a day (other than Saturday or Sunday) on which commercial banks are open for business in London). The Settlement Sum will be deemed "paid" when it has been received into the bank account designated by the payee.

(b) Payment of the Settlement Sum shall be made telegraphically, in full, in United States dollars. The cost incurred in effecting payment shall be for the account of the payer. Payment may only be affected directly between parties. The Settlement Sum shall be paid without any deduction or set off unless agreed by the Buyer and Seller in writing.

## 10. ISDA Master Agreement

This Agreement incorporates by reference the 1992 ISDA Master Agreement (Multicurrency - Cross Border) (without Schedule) as if it were fully set out in this Agreement and with only the following specific modifications and elections:

(a) Section 2(c)(ii) shall not apply so that a net amount due will be determined in respect of all amounts payable on the same date in the same currency in respect of two or more Transactions;

(b) Seller is the Calculation Agent;

(c) The most current published set of ISDA ® Commodity Definitions and ISDA Definitions shall apply;

(d) Credit Event Upon Merger is applicable to both parties;

(e) For the purposes of payments on Early Termination, Loss will apply and the Second Method will apply;

Trade Ref    517710

2 BROADGATE, LONDON EC2M 7UR, TEL: +44(0)20 7532 4934  FAX: +44(0)20 7000 5942
ICAPHYDE LTD, has arranged the above trade for you as name-passing or introducing broker. ICAPHYDE LTD is not responsible for documentation of the transaction between the parties, nor are we, or have we been, responsible for the provision of advice to any person in connection with the above trade. We are also not responsible for the exercise of any options. Please notify us immediately if you disagree with any

(f) The Termination Currency is United States dollars;

(g) The Applicable Rate shall mean the one month USD-LIBOR plus 2%, reset daily and compounded monthly ; and

(h) Local Business Day or banking day shall each refer to such a day in London,

(such form, as modified, the "Standard Agreement" and this Agreement, including the incorporated Standard Agreement, shall govern the transaction referred to in and constituted by this Agreement except as expressly modified by this Agreement.

### 11. Capacity and Good Standing

In addition to the representations contained in Section 3 of the Standard Agreement, each party warrants that:

(a) It is duly organized and validly exists under the jurisdiction of its organization or incorporation, and is solvent and in good standing;

(b) It has the power to execute, deliver and perform this Agreement;

(c) All governmental and other consents that are required to have been obtained by it with respect to this Agreement have been obtained and are in full force and effect and all conditions of any such consents have been complied with;

(d) In the event that either party to this Agreement is a person organized under, domiciled in, or having principle place of business in, the United States, each party represents to the other party that it is an "eligible contract participant" as defined in paragraph 1a(12) of the Commodity Exchange Act (7 U.S.C. paragraph 1a(12), as amended).

### 12. Telephone Recording

Each party consents to the recording of telephone conversations in connection with this Agreement.

### 13. Commission

Each of the parties agrees to pay brokers' commission to any broker (a "Broker") as agreed with any Broker.

### 14. Non-Assignability

Except as provided in Section 7 of the Standard Agreement, this Agreement is non-assignable unless otherwise agreed in writing between the parties to this Agreement.

### 15. Principal To Principal

This is a principal to principal contract with settlement directly between the two parties. Both parties agree that any Broker shall be under no obligation or liability in relation to this Agreement. Both parties agree jointly and severally to indemnify and hold harmless any Broker against all actions, including but not limited to all claims, demands, liabilities, damages, costs and expenses both from the two parties and any third party. Claims, demands, liabilities, damages,

Trade Ref   517710

2 BROADGATE, LONDON EC2M 7UR. TEL: +44(0)20 7532 4934  FAX: +44(0)20 7000 5942
ICAPHYDE LTD, has arranged the above trade for you as name-passing or introducing broker. ICAPHYDE LTD is not responsible for documentation of the transaction between the parties, nor are we, or have wo been, responsible for the provision of advice to any person in connection with the above trade. We are also not responsible for the exercise of any options. Please notify us immediately if you disagree with any

costs and expenses suffered or incurred are to be settled directly by or between the two parties.

### 16. Law and Jurisdiction

Pursuant to Section 13(b) of the Standard Agreement, this Agreement shall be governed by and construed in accordance with English law and subject to the non-exclusive jurisdiction of the High Court of Justice in London, England. The terms of Section 12(a) of the Standard Agreement notwithstanding, proceedings may be validly served upon either party by sending the same by ordinary post and/or by fax to the addresses and/or fax numbers for each party given above.

### 17. Entire Agreement

This Agreement constitutes the entire agreement and understanding of the parties with respect to its subject matter and supersedes all oral communication and prior writings with respect thereto.

### 18. Payment Account Information

| For Seller: | For Buyer: |
|---|---|
| Bank Address: | Bank Address: |
| | |
| Swift Address: | Swift Address: |
| Account No: | Account No: |
| Sort Code: | Sort Code: |
| Beneficiary: | Beneficiary: |

### 19. Third party rights

(a) Unless provided to the contrary in this Agreement, a person who is not a party to this Agreement has no rights under the contract (Rights of Third Parties) Act 1999 to enforce or enjoy the benefit of any term of this Agreement.

(b) Any Indemnified Person and any Broker shall have the right to enjoy the benefit of and enforce the terms of clause 7(d) in the case of any Indemnified Person and clause 13 in case of any Broker.

(c) Notwithstanding any term of this Agreement, the consent of any person who is not a party to this Agreement is not required to rescind or vary this Agreement.

### 20. Inclusion of historical FFAs under Master Agreement

(a) Unless the parties to this Agreement specifically agree otherwise in writing, this clause 20 shall apply in accordance with its terms.

Trade Ref   517710

2 BROADGATE, LONDON EC2M 7UR. TEL: +44(0)20 7532 4934  FAX: +44(0)20 7000 5942
ICAPHYDE LTD, has arranged the above trade for you as name-passing or introducing broker. ICAPHYDE LTD is not responsible for documentation of the transaction between the parties, nor are we, or have we been, responsible for the provision of advice to any person in connection with the above trade. We are also not responsible for the exercise of any options. Please notify us immediately if you disagree with any

(b) This clause 20 applies to this Agreement and every other agreement entered into between parties to this Agreement (and no other persons) before the date of this Agreement:

(i) that expressly stated to be subject to, or is subject to substantially the same terms as, either the FFABA 2000 terms or the FFABA 2005 terms, (excluding for the avoidance of doubt terms as to the Contract Route(s), Contract Rate, Contract Quantity, Contract Month(s), Contract Period and Settlement Date), with or without amendment; and

(ii) that does not incorporate a clause substantially in the same form as this clause 20.

(c) Each agreement to which this clause 20 applies shall be treated as a confirmation (each a "Confirmation") under a master agreement (the "Master Agreement") constituted by the Standard Agreement as modified by, and in the form as incorporated in, the Agreement pursuant to clause 10 as if such an agreement has been entered into between parties on the terms of the Master Agreement on the date of the first such Confirmation.

(d) If there is any inconsistency between the provisions of any agreement constituted pursuant to paragraph (c) above and the agreement constituting a transaction to which this clause 20 applies, the provisions of the agreement constituting the transaction to which this clause 20 applies will prevail for the purposes of the transaction under such agreement.

(e) This clause 20 shall not affect the rights or obligations of the parties under any transaction accrued before the date of this Agreement.

(f) This clause 20 is effective notwithstanding any entire agreement clause or similar provision in any such agreement relevant to any such transaction.

21. Inclusion of subsequent FFAs under Master Agreement

(a) Unless the parties to this Agreement specifically agree otherwise in writing, this clause 21 shall apply in accordance with its terms.

(b) This clause 21 applies to every agreement entered into between the parties to this Agreement (and no other persons) after an agreement incorporating a Master Agreement (as defined in and pursuant to a clause substantially in the same form as and equivalent to clause 20) has been entered into by them.

(c) This Agreement shall constitute a Confirmation under the Master Agreement on the terms of clauses 20 (a), (d), (e) and (f) as if they were incorporated and fully set out in this clause 21 with appropriate and necessary modifications for such incorporation.

Trade Ref   517710

2 BROADGATE, LONDON EC2M 7UR. TEL: +44(0)20 7532 4934  FAX: +44(0)20 7000 5942

ICAPHYDE LTD, has arranged the above trade for you as name-passing or introducing broker. ICAPHYDE LTD is not responsible for documentation of the transaction between the parties, nor are we, or have we been, responsible for the provision of advice to any person in connection with the above trade. We are also not responsible for the exercise of any options. Please notify us immediately if you disagree with any

Signed for the Buyer by
[printed name]

Duly authorised signatory

Date .......................

[Company Seal or Stamp]


Trade Ref    517710

Signed for the Seller by
[printed name]

Duly authorised signatory

Date .......................

[Company Seal or Stamp]

Trade Ref    517710

**2 BROADGATE, LONDON EC2M 7UR. TEL: +44(0)20 7532 4934  FAX: +44(0)20 7000 5942**

ICAPHYDE LTD, has arranged the above trade for you as name-passing or introducing broker. ICAPHYDE LTD is not responsible for documentation of the transaction between the parties, nor are we, or have we been, responsible for the provision of advice to any person in connection with the above trade. We are also not responsible for the exercise of any options  Please notify us immediately if you disagree with any



# IFCHOR S.A.

SHIPBROKERS & CHARTERING AGENTS

SECURITIES & FFA DIVISION
PLACE PÉPINET 1 - CH-1003 LAUSANNE, SWITZERLAND
TEL. +41 21 310 3131 - TELEX 450351 IFC CH
FAX +41 21 310 3100 - e-mail: securities@ifchor.ch



# FORWARD FREIGHT SWAP AGREEMENT (DRY)

**Trade Ref:**            7.1022.6.NkEa.CT/Ifchor
**Contract Date:**        Monday, January 22, 2007

The purpose of this confirmation is to state the terms and conditions of the forward freight swap agreement entered into between:

**Seller**
**Source Link Shipping Co. Ltd., BVI**
15 D, Deji Manson no 188
Changjiang Road
Nanjing 210018
China, People's Republic Of
Tel N. +8625 8681 6500
Fax N. + 8625 8681 6522
Email. chartering@sourcelink.cn
P.I.C. Tony Tao

and

**Buyer**
**Setsea SpA Societa Unipersonale, Torre del Greco**
Via G. Marconi 58
80059 Torre del Greco – Italy
Tel N. + 39 081 881 78 29
Fax N. + 39 081 882 90 04
Email. info@setsea.com
P.I.C. Michele Martucci

This agreement between the parties as constituted by this confirmation is referred to as the **"Agreement"**.

Until superseded by notice information in a subsequent confirmation or other communication, the above addresses are hereby recognized as the correct addresses to which any notification under this Agreement may be properly served.

The terms of this Agreement are as follows:

1)      **Contract Route(s):**

As per the arithmetical average of the **Routes 8, 9, 10 and 11** of the **Baltic Capesize Index** as defined on the Contract Date including any relevant official forthcoming amendments published at the Contract Date which will become effective prior to the settlement of this Agreement.

Trade Ref: 7.1022.6.NkEa.CT/Ifchor

2) **Contract Rate:** USD. 59'500.00 per day

3) **Contract Quantity:** 91 days (see below)

4) **Contract Months:** April 2007 (30 days)
May 2007 (31 days)
June 2007 (30 days)

5) **Contract Period:** April 2007 to June 2007

6) **Settlement Date:**

The last Baltic Exchange Index publication day of each Contract Month.

7) **Settlement Rate:**

(a) The Settlement Rate shall be the average of the rates for the Contract Routes published by the Baltic Exchange over each Settlement Period defined as all Baltic Exchange Index publication days of the Contract Months up to and including each Settlement Date.

(b) If for any reason the Baltic Exchange cannot provide any rate required for establishing the Settlement Rate, then the current chairman of the FFABA may be instructed by either party to form a panel comprising of a minimum of three independent brokers (the "**Panel**") to determine an appropriate rate, which determination will be final and binding on both parties.

(c) Each party shall bear its own costs and expenses in connection with any determination made pursuant to this clause 7.

(d) The parties shall severally indemnify and hold harmless each of the members of the Panel, the Baltic Exchange and its members and the FFABA and its members (the "**Indemnified Persons**") against all liabilities, actions, demands, costs and expenses incurred by any of them arising directly or indirectly out of or in connection with the formation of the Panel and any determination made by the Panel.

(e) As between the parties, each party shall have a right of contribution against the other party in respect of any indemnity payment made pursuant to the preceding paragraph so that their respective liabilities pursuant to that paragraph shall be equal.

8) **Settlement Sum:**

The "**Settlement Sum**" is the difference between the Contract Rate and the Settlement Rate multiplied by the Contract Quantity. If the Settlement Rate is greater than the Contract Rate, the Seller shall pay the Buyer the Settlement Sum. If the Settlement Rate is less than the Contract Rate, the Buyer shall pay the Seller the Settlement Sum.

15

9) **Payment Procedure and Obligations:**

    (a)    Payment of the Settlement Sum is due on the later of two (2) London business days after presentation of payee's invoice (with complete payment instructions) or five (5) London business days after the Settlement Date and for this purpose a "**London business day**" means a day (other than a Saturday or Sunday) on which commercial banks are open for business in London). The Settlement Sum will be deemed "paid" when it has been received into the bank account designated by the payee.

    (b)    Payment of the Settlement Sum shall be made telegraphically, in full, in United States dollars. The costs incurred in effecting payment shall be for the account of the payer. Payment may only be effected directly between the parties. The Settlement Sum shall be paid without any deduction or set off unless agreed by the Buyer and the Seller in writing.

10) **ISDA Master Agreement:**

This Agreement incorporates by reference the 1992 ISDA® Master Agreement (Multicurrency – Cross Border) (without Schedule) as if it were fully set out in this Agreement and with only the following specific modifications and elections:

    (a)    Section 2(c)(ii) shall not apply so that a net amount due will be determined in respect of all amounts payable on the same date in the same currency in respect of two or more Transactions;

    (b)    Seller is the Calculation Agent;

    (c)    the most current published set of ISDA® Commodity Definitions and ISDA® Definitions shall apply;

    (d)    Credit Event Upon Merger is applicable to both parties;

    (e)    for the purposes of payments on Early Termination, Loss will apply and the Second Method will apply;

    (f)    the Termination Currency is United States dollars;

    (g)    the Applicable Rate shall mean the one month USD-LIBOR plus 2%, reset daily and compounded monthly; and

    (h)    Local Business Day or banking day shall each refer to such a day in London.

(such form, as modified, the "**Standard Agreement**") and this Agreement, including the incorporated Standard Agreement, shall govern the transaction referred to in and constituted by this Agreement except as expressly modified by this Agreement.

11) **Capacity and Good Standing:**

In addition to the representations contained in Section 3 of the Standard Agreement, each party warrants that:

    (a)    it is duly organized and validly existing under the jurisdiction of its organization or incorporation, and is solvent and in good standing;

    (b)    it has the power to execute, deliver, and perform this Agreement;

    (c)    all governmental and other consents that are required to have been obtained by it with respect to this Agreement have been obtained and are in full force and effect and all conditions of any such consents have been complied with;

(d)   In the event that a party to this Agreement is a person organized under, domiciled in, or having its principal place of business in, the United States, each party represents to the other party that it is an "eligible contract participant" as defined in § 1a(12) of the Commodity Exchange Act (7 U.S.C. § 1a(12), as amended).

12) **Telephone Recording:**

Each party consents to the recording of telephone conversations in connection with this Agreement.

13) **Commission:**

Each of the parties agrees to pay brokers' commission to any broker as agreed with any Broker.

14) **Non-Assignability:**

Except as provided in Section 7 of the Standard Agreement, this Agreement is non-assignable unless otherwise agreed in writing between the parties to this Agreement.

15) **Principal To Principal:**

This is a principal to principal agreement with settlement directly between the two parties. Both parties agree that Ifchor S.A. shall be under no obligation or liability in relation to this Agreement. Both parties agree jointly and severally to indemnify and hold harmless Ifchor S.A. against all actions, including but not limited to all claims, demands, liabilities, damages, costs and expenses both from the two parties and any third party. Claims, demands, liabilities, damages, costs and expenses suffered or incurred are to be settled directly by or between the two parties.

16) **Law and Jurisdiction:**

Pursuant to Section 13(b) of the Standard Agreement, this Agreement shall be governed by and construed in accordance with English law and shall be subject to the exclusive jurisdiction of the High Court of Justice in London, England. The terms of Section 12(a) of the Standard Agreement notwithstanding, proceedings may be validly served upon either party by sending the same by ordinary post and/or by fax to the addresses and/or fax numbers for each party given above.

17) **Entire Agreement:**

This Agreement constitutes the entire agreement and understanding of the parties with respect to its subject matter and supersedes all oral communication and prior writings with respect thereto.



18) **Payment Account Information:**

<u>For Seller:</u>
Bank address:

Standard Chartered Bank, Shenzhen Branch
Account : Source Link Shipping Co., Ltd.
Swift : SCBLCNSXSHZ
A/C NO : 3703950411

<u>For Buyer:</u>
Bank address:

BANCA POPOLARE DELL'ETRURIA E DEL LAZIO
IBAN : IT06 W053 9001 6000 0007 8000 060
Codice Bic / Swift filiale : ARBAIT33137
Beneficiary : SETSEA SRL

19) **Third party rights**

   (a) Unless provided to the contrary in this Agreement, a person who is not a party to this Agreement has no rights under the Contracts (Rights of Third Parties) Act 1999 to enforce or enjoy the benefit of any term of this Agreement.

   (b) Any Indemnified Person and any Broker shall have the right to enjoy the benefit of and enforce the terms of clause 7(d) in the case of any Indemnified Person and clause 13 in the case of any Broker.

   (c) Notwithstanding any term of this Agreement, the consent of any person who is not a party to this Agreement is not required to rescind or vary this Agreement.

20) **Inclusion of historical FFAs under Master Agreement**

   (a) **Unless the parties to this Agreement specifically agree otherwise in writing, this clause 20 shall apply in accordance with its terms.**

   (b) This clause 20 applies to this Agreement and to every agreement entered into between the parties to this Agreement (and no other persons) before the date of this Agreement:

   (i) that is expressly stated to be subject to, or is subject to substantially the same terms as, either the FFABA 2000 terms or the FFABA 2005 terms, (excluding for the avoidance of doubt terms as to the Contract Route(s), Contract Rate, Contract Quantity, Contract Month(s), Contract Period and Settlement Date), with or without amendment; and

   (ii) that does not incorporate a clause substantially in the same form as this clause 20.

   (c) Each agreement to which this clause 20 applies shall be treated as a confirmation (each a "**Confirmation**") under a master agreement (the "**Master Agreement**") constituted by the Standard Agreement as modified by, and in the form as incorporated in, this Agreement pursuant to clause 10 as if such agreement had been entered into between the parties on the terms of the Master Agreement on the date of the first such Confirmation.

   (d) If there is any inconsistency between the provisions of any agreement constituted pursuant to paragraph (c) above and the agreement constituting a transaction to which this clause 20 applies, the provisions of the agreement constituting the transaction to which this clause 20 applies will prevail for the purposes of the transaction under such agreement.

   (e) This clause 20 shall not affect any rights or obligations of the parties under any transaction accrued before the date of this Agreement.



(f) This clause 20 is effective notwithstanding any entire agreement clause or similar provision in any such agreement relevant to any such transaction.

21) **Inclusion of subsequent FFAs under Master Agreement**

(a) **Unless the parties to this Agreement specifically agree otherwise in writing, this clause 21 shall apply in accordance with its terms.**

(b) This clause 21 applies to every agreement entered into between the parties to this Agreement (and no other persons) after an agreement incorporating a Master Agreement (as defined in and pursuant to a clause substantially in the same form as and equivalent to clause 20) has been entered into by them.

(c) This Agreement shall constitute a Confirmation under the Master Agreement on the terms of clauses 20 (c), (d), (e) and (f) as if they were incorporated and fully set out in this clause 21 with appropriate and necessary modifications for such incorporation.

Signed for the Seller by                    Signed for the Buyer by

........................................    ........................................
Duly Authorized Signatory                   Duly Authorized Signatory

---

Note: ISDA is a registered trademark of the International Swaps and Derivatives Association, Inc.

19